33 C.C.P.A. (Patents)

Application of GREENBAUM.

Patent Appeal No. 5124.

Court of Customs and Patent Appeals.

March 6, 1946.

Hammond & Littell, of New York City (Nelson Littell and Charles P. Pollard, both of New York City, and Melville E. Jones, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

Claims 3, 4, 6 and 7 of appellant's application for a patent relating to an antiseptic ointment were rejected by the Primary Examiner of the United States Patent Office. No claims were allowed. The Board of Appeals affirmed the examiner's rejection and the appellant has here appealed from the board's decision.

Claims 3 and 4 are illustrative of the appealed subject matter and read as follows:

"3. An ointment, comprising a base, with approximately 2% allantoin and 10% sulfanilamide dispersed throughout said base in the form of colloidally dispersed particles of solution, colloidally dispersed solid particles and finely divided crystals.

"4. An ointment, comprising the reaction product of a fatty acid with triethanolamine, glycerin, allantoin and a sulfa drug."

The rejection was based upon the prior art and the references relied upon are:

Greenbaum, 2,124,295, July 19, 1938.

Veal and Klepser, "The Treatment of Pyogenically Infected Wounds by the Topical Application of Powdered Sulfanilamide and Sulfanilamide-Allantoin Ointment," Medical Annals of the District of Columbia, February, 1941, pages 61 to 63.

Journal of the American Medical Association, January 25, 1941, page 356.

In describing the alleged invention the examiner stated:

"The ointment disclosed is prepared according to the following formula:

| | Decimal Portion |
|---|---|
| Stearic acid (or other fatty acid in excess) | 27.50 |
| Triethanolamine | 1.00 |
| Glycerine | 20.00 |
| Allantoin crystals | 2.00 |
| Sulfanilamide | 10.00 |
| Distilled water, (Q. S.) | |
| Oil of Lavender | 0.239 |
| Terpineol | 0.016 |
| Peanut Oil | 0.25 " |

He then describes the process of compounding the ointment in the following language:

"Briefly, the compounding consists of heating the peanut oil and stearic acid to 75° C, adding thereto a glycerine-water-triethanolamine solution of the allantoin also heated to 75° C, mixing thoroughly, then adding a heated solution of the sulfanilamide in glycerine, again mixing thoroughly and finally adding the perfumes and allowing the mass to cool after a final mixing. The resulting ointment is said to contain the sulfanilamide and allantoin in the form of colloidal solid particles, minute crystals and colloidally dispersed solution particles and is said to be a highly effective preparation."

As shown in the Veal and Klepser article, the ointment described in the instant application is used in the treatment of pyogenically infected wounds. It has long been known that certain sulfa drugs will quickly arrest and eradicate infection but that for some reason new cells would not form in the proper way for healing. It was discovered, however, when a proper ointment was used and which comprised allantoin and the sulfa drug, that not only was the infection brought under control but healing began and new red flesh was soon formed. This is explained in part by the applicant, who, it would seem, has contributed greatly to bringing relief in cases of infected wounds, particularly where proper precautions have not been taken and the infection remains uncured for long periods of time.

The properties of allantoin had been known long before appellant prepared his

pharmaceutical and before he filed his original application for the patent to which reference is made in his instant application. Allantoin, though now made synthetically, originally was derived from animal secretions. It was found that maggots in a wound left a secretion that had the tendency to bring about granulation or healing of wounds and to promote the growth of healthy living tissue. The modern material is stated by appellant in his said patent to be produced by "chemical synthesis from uric acid."

The examiner rejected all of the claims as being fully met by the Veal and Klepser article. They were also rejected upon the Veal and Klepser article in view of applicant's own patent and the Journal of the American Medical Association article.

In rejecting the claims the examiner applied the references in the following manner:

"All of the claims stand rejected as fully met by the Veal & Klepser article. Since this reference clearly disclosed 10% sulfanilamide and 2% allantoin in a glycerinated stearic acid ointment with triethanolamine, and since it is admitted that it relates to the same product disclosed and claimed herein, the Examiner is wholly unable to understand the traverse of this rejection. As it has been noted above, the article was published more than a year prior to the filing of this application.

"The claims are also rejected as unpatentable over the Veal & Klepser article in view of the other references. If any doubt were to exist as to whether the Veal & Klepser preparation had the specific colloidal and finely divided crystal form specified in certain of the claims, this doubt is reduced to the point where no invention would be involved in such a preparation since the Greenbaum patent clearly teaches the desirability of such physical form and how to obtain it. No invention would be involved in preparing the Veal & Klepser sulfanilamide-allantoin ointment in the manner that Greenbaum teaches is desirable to prepare an allantoin ointment. The J. A. M. A. article supplies the teaching, if any be needed, that the sulfanilamide should also be dissolved in a suitable hot solvent before admixture with the other ingredients just as the Greenbaum patent dissolves the allantoin."

The board affirmed the examiner's decision as to both grounds of rejection and

discussed the issues presented quite fully, but we find it necessary to here set out only a portion of the board's decision, which is as follows:

"The claims on appeal are directed to the article or product as an ointment and not to the process of compounding the ointment. The publication by Veal and Klepser on page 62 gives a tabulation of the formula and the ingredients included therein, among which are sulfanilamide 10%, allantoin 2% and a greaseless base. The publication states that the base used was a glycerinated stearic acid ointment with triethanolamine. It is considered that this is a complete disclosure of the subject matter of these claims and that the ground of rejection is proper since the publication is dated more than one year prior to the date of the application.

"Receipt of a supplemental brief with accompanying affidavit is acknowledged. This supplemental brief appears to argue with respect to prior public use of the article claimed. The rejection is on the ground of prior printed publication. It is noted that R. S., Section 4886 and Rule 24 provide that a patent may be obtained under certain conditions among which are that the article has not been described in any printed publication more than one year prior to the filing of the application.

"The examiner has also rejected the claims as unpatentable over the Veal and Klepser article in view of the other references. He states that if any doubt were existing as to whether the Veal and Klepser preparation had the specific colloidal and finely divided form specified in certain of the claims, this doubt is reduced to the point where no invention would be involved in such a preparation since the Greenbaum patent clearly teaches the desirability of such physical form and how to obtain it and he holds that there would be no invention involved in preparing the Veal and Klepser sulfanilamide-allantoin ointment in the manner that Greenbaum teaches is desirable to prepare an allantoin ointment. He further states that the Journal of the American Medical Association supplies the teaching, if any be needed, that the sulfanilamide should be dissolved in a suitable hot solvent before admixture with the other ingredients. It is considered that this ground of rejection is also proper."

As is pointed out by the board in a portion of its decision not here quoted,

the examiner was at a loss to understand the logic of applicant's argument and was unable to understand the traverse of the examiner's rejection. We must confess we also have had considerable difficulty in understanding appellant's position. To some extent he predicates his contention that the Veal and Klepser reference is not a proper one to be the basis of rejection of his claims apparently because it was the applicant that was concerned in furnishing the information, either directly or indirectly, which was published. This contention is so lacking in merit as to require no extended discussion.

Without expressing or indicating any disapproval of the rejection on the ground of the Veal and Klepser publication being a complete statutory bar to the allowance of the claims on appeal, we think it sufficient for our present purposes to discuss only the second ground of rejection, which is to the effect that the claims are unpatentable over the Veal and Klepser article in view of the other references.

The article in the Journal of the American Medical Association was relied upon merely to show that it was an old expedient to incorporate sulfanilamide in an ointment by dissolving in a hot solvent and then, while still hot, adding it to a heated base material.

In this court appellant has urged at great length that the particular feature of the appealed claims which lends patentability to them relates to the colloidally dispersed particles which may be dispersed in solid particles and finely divided crystals. Appellant points out that he, by experimentation, had learned much concerning the proper use and the dangers attendant upon the use of the sulfanilamide drug and that by having the stated colloidal dispersion in the form of solid particles and finely divided crystals it afforded an opportunity for the allantoin and sulfanilamide in the ointment to be available when needed and that some of the colloidal dispersion would quickly perform its purpose and later the solid particles, and still later the crystals, would come into action.

It is on account of this argument that the Greenbaum patent becomes important. As is pointed out by the Solicitor for the Patent Office,

" * * * the Greenbaum patent adequately discloses all details of the ointment base. * * * the Greenbaum patent teaches the desirability of the form of the article specified and how to obtain it. In fact the present application refers to the Greenbaum patent, stating that the object is to provide an improvement over that patent and later states that 'the combination of sulfanilamide and the other sulfa drugs with allantoin amounts to a continuation in direct line with the discoveries and invention represented by said patent No. 2,124,295.' "

In view of certain features of appellant's patent where he describes his process and of certain limitations in the claims of the patent, such as "in minute crystals and colloidally dispersed throughout the mass," "dispersed in the form of a solution and minute particles," and "minute crystals and colloids," it is difficult to understand just what appellant seeks to accomplish by his present application. Incidentally it may be noted that claim 4 makes no mention of the dispersed particles in the solution but broadly calls for an ointment made up of the reaction product of a fatty acid with triethanolamine, glycerin, allantoin and a sulfa drug.

Moreover, we find the following in the specification of the patent:

"This provides an ointment in a greaseless base, containing approximately 2% allantoin uniformly distributed and suspended in solution and both in colloidal and crystalline form, or in other words, providing a combined colloidal dispersion and minute crystal form of allantoin throughout the greaseless base."

Appellant, as a proposition of law, states the following:

"It is well established that prior publications as well as prior patents in order to constitute anticipation of an invention must disclose the invention in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it appertains to construct the invention."

That this is not a correct statement of law is too obvious to require comment and it is sufficient to state that the references relied upon by the Patent Office tribunals are sufficiently clear in their disclosures as to justify the holding that, in view of the said references, appellant's appealed claims do not define invention.

The decision of the board is affirmed.

Affirmed.